**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANDRE JACOBS,                          )
                                       )
              Plaintiff,               )
                                       )
       v.                              )          Civil Action No. 07-237
                                       )          Judge Conti
CITY OF PITTSBURGH POLICE, *et al*.,   )          Magistrate Judge Bissoon
                                       )
              Defendants.              )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion to Substitute Party (Doc. 57) be

granted, and that Defendants' Motion for Summary Judgment (Doc. 59) be granted.

### II. REPORT

Plaintiff Andre Jacobs is a state prisoner incarcerated at the State Correctional Institution

at Dallas, Pennsylvania.  Jacobs filed this prisoner civil rights action pursuant to 42 U.S.C.

§ 1983 against five Deputy United States Marshals and three prison guards employed by the

Pennsylvania Department of Corrections.  The claims asserted in this case arise from

Defendants' interaction with Plaintiff while they were transporting him to and from a federal

courtroom where Plaintiff was litigating a prisoner civil rights case.  Plaintiff's Complaint is in

five counts and contains allegations that:  (1) Plaintiff's Eighth Amendment rights were violated

on March 3, 2005, when Defendant Delano assaulted Plaintiff in the elevator by choking Plaintiff

and "roughly banging" him against the wall, and later that same day at the conclusion of the civil

trial when Defendants Costello, Delano, Potter and Bayha allegedly assaulted Plaintiff and beat

him until he passed out; (2) Defendants retaliated against Plaintiff and his witnesses by harassing

and intimidating them; (3) Defendants conspired to cover up the assaults mentioned above;
(4) Defendant conspired to intimidate Plaintiff's witnesses; and (5) the assaults on March 3, 2005
also give rise to state law tort claims for battery (Doc. 7).

Defendants Bayha, Delano, Potter, Moorhead and Holtz, all Deputy United States
Marshals, have filed a Motion to Substitute Party (Doc. 57) asserting that the United States is the
only appropriate party with respect to Plaintiff's tort claims for battery because the named
Defendants were acting within the scope of their employment at the time the alleged torts
occurred.  Plaintiff was directed to respond to the Motion, but has not.  The same Defendants
have filed a Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 59).  Plaintiff
has responded and has attached a detailed affidavit to his response.  The parties have treated the
as one seeking summary judgment, and Plaintiff has been afforded the opportunity to present
evidence in response and has done so.  The Court will address the motion as one seeking
summary judgment.

   **A.  Legal Standard**

A party's burden in response to a well-pleaded motion for summary judgment is to
present ". . . specific facts showing that there is a *genuine issue for trial*."  Fed. Rule Civ. Proc.
56(e) (emphasis added).  If the non-moving party cannot so demonstrate the factual record will
be taken as presented by the moving party and judgment will be entered as a matter of law.
Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  An issue is genuine
only if the evidence, viewed in the light most favorable to the non-moving party, is such that a
reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242 (1986).  The inquiry involves determining "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52.

**B.  Facts**

Andre Jacobs is a state prisoner who has been incarcerated by the Commonwealth of Pennsylvania since 1998.  Jacobs filed a prisoner civil rights suit that was docketed at Civil Action No. 02-1703, alleging that his constitutional rights were violated during his incarceration. The case was tried before a jury from February 28 through March 3, 2005.  Defendants are Deputy United States Marshals and state corrections officers who were tasked with transporting Jacobs and his witnesses (also state prisoners) to and from the State Correctional Institution at Fayette.  Once in the courthouse, Defendants escorted Jacobs and his witnesses from the holding cell to the courtroom.

 Jacobs alleges that he was "assaulted" twice during the course of his civil trial.  On March 3, 2005, during a break, Defendant Delano allegedly grabbed Jacobs by the neck on the elevator and slammed him up against the wall (Id., ¶ 13).  Plaintiff also alleges that he was assaulted by Defendants Potter, Bayha and Delano (and Defendant Costello, a state prison guard whose actions are not the subject of the instant motion) when he was being escorted out of the courtroom at the conclusion of the trial on March 3, 2005 (Id., ¶ 16).  Plaintiff has provided a detailed affidavit wherein he recounts his version of events at the conclusion of the trial (Doc. 68-1).  Plaintiff states that he was handcuffed and walking in the hallway toward the elevator when he turned to speak to his grandmother (Id., ¶ 9).  Defendant Potter allegedly grabbed Plaintiff's arm told him to keep moving.  Plaintiff "pulled . . . away from Potter's grasp" which caused Potter to yank Plaintiff's arm, making Plaintiff drop the books he was carrying (Id.). Defendant Costello then allegedly "attacked" Plaintiff by punching him in the back of the head.

3

Costello grasped Plaintiff from behind and Defendant Bayha "slapped" Plaintiff, and Plaintiff grabbed Bayha's arm (Id., ¶ 10).  Someone screamed "get off her," and Plaintiff was slammed against the elevator wall (Id.).  Defendants then allegedly "beat [Jacobs] to the ground" even though he was "not resisting" (Id.).

Not surprisingly, Defendants perceived the events differently, and charged Jacobs with one count of "Assaulting, Resisting or Impeding a Federal Employee," 18 U.S.C. § 111(F)(a)(1) and (b) (Doc. 60-2, p. 1).   Jacobs entered a plea of not guilty, and proceeded to a trial by jury before United States District Judge Gustave Diamond.  Defendants testified that Jacobs, having just lost his civil case, became angry while being led into the elevator, and that he threw his books and papers at Deputy Marshal Potter, began striking Potter with his shackles, and then grabbed Deputy Marshal Bayha before being overpowered and brought to the floor of the elevator.  Jacobs's defense at trial was that he was subjected to excessive force by Defendants on the way to the elevator, and that any actions he took were to defend himself from what he perceived to be an assault.

Judge Diamond instructed the jury concerning the elements of the offense as follows:

> In order to for you to find the defendant guilty of the crime charged . . . the government must prove beyond a reasonable doubt every one of the following five elements:
>
> First.  That Robert Potter and Deborah Bayha were federal officers.
>
> Second.  That defendant forcibly assaulted or resisted or opposed or impeded or interfered with Robert Potter or Deborah Bayha.
>
> Third.  That at the time, Robert Potter and Deborah Bayha were engaged in the performance of their official duties.
>
> Fourth.  That the defendant acted willfully.
>
> And, fifth.  That the defendant's actions resulted in bodily injury.

(Doc. 71-1, p. 2).  Judge Diamond went on to note that "all of the acts, assault, resist, oppose, impede and interfere are modified by the word forcibly" so that a conviction can only occur if Plaintiff acted "forcibly" (Id., p. 3).  Finally, the jury was instructed concerning Jacobs's defense that he had been subjected to the use of unreasonable or excessive force:

> Counsel for the defendant has argued that the Deputy United States acted with unreasonable or excessive force and that defendant's actions were in response to the unreasonable or excessive force and were justified in view of the unreasonable or excessive use of force.
>
> The use of unreasonable force is inconsistent with a United States Deputy Marshal's performance of his or her official duties.  Thus, if you have a reasonable doubt that the force used was reasonable under the circumstances and was not excessive, you may find that the Deputy United States Marshals were not engaged in the performance of their official duties at the time of the defendant's acts and, therefore, that this element of the government's case has not been proven.
>
> If you have a reasonable doubt as to whether Robert Potter and Deborah Bayha were Deputy United States Marshals or were engaged in the performance of their official duties at the time of the alleged acts by defendant, you must find the defendant not guilty.

(Id., p. 4).  Jacobs was found guilty and was sentenced to 210 months imprisonment (Doc. 60-2, p. 1).

### C.  <u>Analysis</u>

#### 1.    **Excessive force claim – Defendant Delano**

Defendants do not move for summary judgment with respect to the claim that Defendant Delano used excessive force against Plaintiff in the elevator on March 3, 2005.  This alleged incident occurred prior to the second claim of excessive force that is alleged to have occurred later that same day after the jury returned a verdict.  This claim, therefore, survives the instant motion.

### 2.      Excessive force claim – incident following the verdict

#### a.      Collateral estoppel

Defendants argue that Plaintiff cannot litigate in this forum issues already decided by the jury in his criminal case, and that this bars his claim that he was subjected to excessive force during the altercation that occurred after his civil trial.  Plaintiff agrees that while some issues are foreclosed by the jury's verdict, i.e., he cannot now contest that he "impeded" or "interfered" with Potter and Bayha, he argues that the jury was not asked to decide whether he was subjected to excessive force during the incident.

There are four elements necessary to the application of collateral estoppel:  "(1) an issue decided in a prior action is identical to the one presented in a later action;  (2) the prior action resulted in a final judgment on the merits;  (3) the party against whom collateral estoppel is asserted was a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." Jones v. U.S. Parcel Serv., 214 F.3d 402, 405-06 (3rd Cir. 2000).  Collateral estoppel prevents a Section 1983 plaintiff from relitigating issues decided against him in prior criminal proceedings.  Allen v. McCurry, 449 U.S. 90, 102 (1980) (collateral estoppel arising from state court criminal proceedings).

There is no dispute in this case that Plaintiff's criminal trial satisfies elements 2-4 set forth above.  The parties do contest, however, the issues actually decided by the jury in the criminal proceeding, i.e., whether the first element, identity of issue, is met in this case.  As a general rule, a civil rights plaintiff is collaterally estopped from challenging the facts underlying his criminal conviction.  See Grier v. Scarpine, 2008 WL 655865, *5 (W.D. Pa., March 5, 2008) (McVerry, J.) (citing cases).  However, this does not mean that every possible factual dispute is

foreclosed.  Rather, the Court must be guided by the issues that were necessarily decided in the criminal trial.  Compare, DiJoseph v. Vuotto, 968 F.Supp. 244 (E.D. Pa. 1997) (Collateral estoppel did not prevent Section 1983 claim of excessive force because the issue was not addressed in the underlying criminal proceeding.).

In this case, Plaintiff's argument that the jury in his criminal trial was not asked to determine (and did not, in fact, determine) whether he was subjected to excessive force is conclusively disproved by the portion of the jury instructions set forth at length above.  While in the abstract "it is possible for a finding that [a defendant] was resisting arrest to coexist with a finding that the police used excessive force to subdue him," Nelson v. Jashurek, 109 F.3d 142, 145-46 (3rd Cir. 1997), abrogated on other grounds by Muhammad v. Close, 540 U.S. 749 (2000), Judge Diamond **specifically** instructed the jury that it was required to find beyond a reasonable doubt that Plaintiff had not been subjected to excessive force before it could convict. More specifically, the jury was told that the use of unreasonable or excessive force "is inconsistent with a United States Deputy Marshal's performance of his or her official duties" and that it must find beyond a reasonable doubt that Deputy Marshals Bayha and Potter were "engaged in the performance of their official duties" in order to convict (Doc. 71-1, p. 2).  This is not a case, as Plaintiff suggests, where the underlying facts are unknown or in dispute.  Rather, the jurors in Plaintiff's criminal trial were required to have concluded that he was not subjected to excessive force in order to convict.

Jacobs was provided a full and fair opportunity to litigate what occurred in the hallway and elevator following his civil trial.  The jury's verdict in Jacobs's criminal trial, and the factual findings necessary to that verdict, are a specific rejection of Plaintiff's version of events (i.e., his attempt to cast the events in the hallway and the elevator at the conclusion of his criminal trial as

his innocent response to excessive force).  Plaintiff cannot again litigate the issue of the use of excessive force during the post-trial confrontation with Defendants.

### b. <u>Heck</u> bar

The jury's express consideration and rejection of Plaintiff's excessive force gives rise to an additional (although analytically similar) bar to relitigation of the issue premised upon the rule set forth in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  A prisoner may not bring a civil rights suit if its success would render invalid a criminal conviction that has not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus." <u>Id.</u>, at 487.  Plaintiff's present attempt to establish that his actions were merely a reaction to the use of excessive force would necessarily call into question the validity of his criminal conviction for "assaulting, resisting or impeding" a federal employee.  <u>See</u> <u>Feliz v. Kintock Group</u>, 297 Fed. Appx. 131, 136 (3rd Cir. 2008) (holding that excessive force claim is barred by <u>Heck</u>, because it would call into question the plaintiff's conviction for assault for the same incident);  <u>McCann v. Neilsen</u>, 466 F.3d 619, 621 (7th Cir. 2006) ("[A] plaintiff's claim is <u>Heck</u>-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction.").

Jacobs also cleverly argues, however, that Defendants' use of force, although initially justified by his behavior, may no longer be justified if he stopped resisting at some point during the confrontation, but Defendants continued to use force against him.  Thus, Plaintiff asserts that he may still be permitted to litigate whether he was subjected to excessive force for the time period (however brief) between when he decided to stop assaulting (or impeding or resisting) Defendants, and when Defendants stopped using force.

There is support for the proposition that a claim of excessive force arising from a confrontation like the one that occurred here is not necessarily <u>Heck</u>-barred if "the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim."  <u>See</u> <u>Bush v. Strain</u>, 513 F.3d 492, 498 (5th Cir. 2008).  In <u>Bush</u>, for example, the Court of Appeals for the Fifth Circuit permitted a claim of excessive force to proceed even though the plaintiff had been convicted of resisting arrest because the excessive force claim arose from events alleged to have occurred after the arresting officer had already subdued the plaintiff.  <u>See</u> <u>also</u>, <u>Wells v. Cramer</u>, 158 F. App'x 203, 204 (11th Cir. 2005) ( "To the extent that Wells's complaint alleged an excessive use of force after he was arrested, restrained and posed no threat to the defendant officers, his section 1983 action, if successful, would not necessarily imply the invalidity of his underlying convictions and is not <u>Heck</u>-barred.").

Plaintiff agrees that he cannot now contest that he initiated the confrontation in this case. In fact, the jury in Plaintiff's criminal trial was required to find that Plaintiff acted "forcibly" and "willfully" to either assault or impede Defendants' attempts to escort him to the courthouse holding cell (Doc. 71-1, pp. 2-3).  The jury also was required to find that Plaintiff had not been subjected to the use of excessive force during the altercation (<u>Id</u>., p. 4).  While Plaintiff did not argue in his criminal case, as he does here, that a separable, temporally distinct use of force occurred, Plaintiff presented his version of events to the jury, and Judge Diamond's instructions made no distinction between force used at the inception of the incident or at the end of the incident.  The jury was asked to determine if Defendants use "unreasonable or excessive force" before it could convict, and this necessarily encompasses any use of force during the encounter.

Further, even if Jacobs were not barred from now attempting to identify a "temporally and conceptually distinct" use of force in this case, a consideration of the findings made by the

criminal jury and Jacobs's own affidavit defeat any such assertion.  Jacobs was found by the jury

to have willfully and forcibly acted to prevent Deputy Marshals Potter and Bayha from

performing their duties, i.e., he began the altercation in the hallway.  Further, Jacobs concedes

that, after instigating the confrontation, he **continued to resist attempts to subdue him**.  Jacobs

says that he "pulled away" from Potter, and "grabbed" Bayha by the arm (Doc. 68-1, ¶¶ 9-10).  It

was at this point that Jacobs claims he was "slammed against elevator wall" and, for the first

time, "was not resisting" (Doc. 68-1, ¶ 10).  Potter and Delano are alleged to have continued to

hit and kick Jacobs until he went to the ground and was rendered unconscious.

The factual scenario here, even accepting as true those of Jacobs's averments that are not

clearly at odds with the jury's verdict, would not permit a reasonable fact-finder to conclude that

a "temporally distinct" event occurred.  Jacobs has presented no evidence from which a

reasonable jury could infer that any Defendant perceived his alleged decision to stop resisting but

chose to employ force nonetheless.  In <u>Feeney v. Powell</u>, 2008 WL 2478385 (D.N.J., June 17,

2008) (Kugler, J.), the Court addressed a similar situation:

> Feeney attempts to parse the sequence of events to carve out a viable
> Fourth Amendment claim that would not undermine his aggravated assault
> convictions.  Nevertheless, his effort at drawing a temporal distinction
> flies in the face of his admissions during his plea.  **The cases on which**
> **Feeney relies are inapposite because the findings of fact underlying**
> **those plaintiffs' convictions allow for the possibility of episodes of**
> **excessive force that are severable from the plaintiffs' resistance or**
> **commission of an assault . . . The facts supporting Feeney's**
> **convictions reveal no such break in events.**  Although Judge Donio
> relied in particular on Feeney shoving Sergeant Reed and kicking Officer
> Powell [in finding factual support for Feeney's plea of guilty], the picture
> Feeney paints at his plea hearing is undeniably one of uninterrupted
> physical struggle.  As a result, Feeney's convictions for aggravated assault
> preclude his Fourth Amendment claim.

<u>Id</u>., at *5 (emphasis added).  This case is like <u>Feeney</u>.  The facts presented at Jacobs's

criminal trial, and the facts contained in his own affidavit, simply do not support a

finding that there was a "break in events."  The testimony of all involved, including

Plaintiff, was that the confrontation occurred quickly and that several law enforcement

personnel immediately responded to Jacobs's actions by forcing him onto the elevator

where he resisted but was quickly overpowered and taken to the ground.  Jacobs cannot

create a material dispute of fact by asserting that he stopped resisting the instant before he

was finally subdued.  Compare, Hurt v. City of Atlantic City, 2010 WL 703193 (D. N.J.,

Feb. 24, 2010) (Simandle, J.) ("Plaintiff has offered evidence that the defendant officers

used excessive force after Plaintiff assaulted Officer Timek, after Plaintiff resisted arrest,

and most importantly after Officer Timek and Officer Warner successfully subdued and

handcuffed Plaintiff on the ground.").

### c.        Eighth Amendment analysis

Plaintiff's claim also fails if the Court proceeds to the merits.  The underlying

Constitutional right implicated here is the Eighth Amendment's prohibition against cruel and

unusual punishment.  Whitley v. Albers, 475 U.S. 312, 327 (1986) (After conviction, the Eighth

Amendment "serves as the primary source of substantive protection ... in cases ... where the

deliberate use of force is challenged as excessive and unjustified.").  To state a claim under the

Eighth Amendment, an inmate must satisfy an objective element and a subjective element.

Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The objective element questions whether the

deprivation of a basic human need is sufficiently serious; the subjective component asks whether

the officials acted with a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298

(1991).  The objective component is analyzed in the context of "contemporary standards of

decency," Hudson v. McMillian, 503 U.S. 1, 8 (1992), while the subjective component arises

from the concept that "only the unnecessary and wanton infliction of pain implicates the Eighth

Amendment." <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)).

It follows that the central judicial inquiry in considering an Eighth Amendment excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Hudson</u>, 503 U.S. at 7; <u>Smith v. Mensinger</u>, 293 F.3d 641, 649 (3d Cir. 2002). A defendant is entitled to summary judgment with respect to an excessive force claim where the evidence, viewed in the light most favorable to the Plaintiff, does not support "a reliable inference of wantonness in the infliction of pain." <u>Thomas v. Ferguson</u>, 361 F.Supp.2d 435, 438 (D. N.J. 2004) (quoting <u>Whitley v. Albers</u>, 475 U.S. at 322).

The jury's verdict in Jacobs's criminal case conclusively establishes that Jacobs, already a convicted felon, intentionally and forcibly began a dangerous confrontation with Deputy Marshals in a public place while they were escorting him to a holding cell. There is no question that Defendants' response to Plaintiff's conduct was designed not to inflict harm, but to restore discipline. Further, Plaintiff's own affidavit establishes that he initially resisted attempts by one Deputy to restrain him, and continued to resist by forcibly grabbing a female Deputy (who, the trial transcript reveals, had a holstered handgun within Plaintiff's reach). The episode as described at trial, and as described in Plaintiff's own affidavit, was not lengthy and there were no "breaks in the action." The Marshals and Corrections Officers involved acted quickly to subdue an unruly and combative prisoner.

Jacobs attempts to transform Defendants' good faith attempt to restore discipline into an unprovoked assault by claiming that he "was not resisting" just before he was finally wrestled to the ground. This alleged split-second decision on Plaintiff's part, even if it occurred, does not

permit a fact finder to conclude that any Defendant actually perceived Plaintiff's decision to

cease resisting efforts to subdue him, and certainly does not permit a fact finder to conclude that

any Defendant then subjectively decided to wantonly inflict pain.  In short, there is no evidence

in this record that would support "a reliable inference of wantonness in the infliction of pain"

during the brief confrontation between Jacobs and Defendants in the hallway following his trial.

Whitley, supra.  Therefore, Defendants are entitled to summary judgment on Plaintiff's excessive

force claim even if that claim is not entirely barred by collateral estoppel or Heck.

### d.  Failure to intervene

Plaintiff indicates that he is not certain whether Defendant Holtz and Moorehead were

involved in the altercation, but states that they "were at all times in a position to stop this

brutalization and did not." (Doc. 68-1, ¶ 11).  "[A] corrections officer's failure to intervene in a

beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the

corrections officer had a reasonable opportunity to intervene and simply refused to do so."

Smith, 293 F.3d at 650 (3rd Cir. 2002).  A Plaintiff must prove that the officers had both a duty

and the opportunity to intervene, but failed to do so.  Id. at 650-51.  Of course, in order to prove a

claim for failure to intervene, "there must exist an underlying constitutional violation."  Harper

v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005).  In this case, no duty to intervene arose because

there was no unconstitutional use of force.  Defendants Holtz and Moorehead are entitled to

summary judgment with respect to Plaintiff's claim that they failed to intervene.

### 2.  Retaliation

"Government actions, which standing alone, do not violate the Constitution, may

nonetheless be constitutional torts if motivated in substantial part by a desire to punish an

individual for exercise of a constitutional right."  Allah v. Seiverling, 229 F.3d 220, 224-25

(3d Cir. 2000);  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  In order to state a prima

facie case of retaliation, a prisoner must demonstrate:

> 1)    the conduct in which he was engaged was constitutionally protected;
>
> 2)    he suffered "adverse action" at the hands of prison officials; and
>
> 3)    his constitutionally protected conduct was a substantial or motivating
> factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330,

333 (3d Cir. 2001).  To show an "adverse action," Plaintiff must demonstrate that Defendants'

actions were "sufficient to deter a person of ordinary firmness from exercising his

[constitutional] rights."  Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002)

quoting Allah v. Seiverling, 229 F.3d at 225.

Plaintiff alleges that Defendants "harassed" him and his witnesses throughout the civil

trial through rough, rude treatment and making threats against them.  Plaintiff also asserts that

Defendants "assaulted" him on two occasions and that this was done in retaliation for his filing a

civil lawsuit.

To the extent that Plaintiff is alleging that the use of excessive force following his trial

was retaliatory conduct, the claim is defeated because the jury has already determined that

Plaintiff was not subjected to excessive force.  Further, even where a prima facie case of

retaliation has been made out, the burden then shifts to the defendants to demonstrate, by a

preponderance of the evidence, that their actions would have been the same even if Plaintiff were

not engaging in the constitutionally protected activities.  Rauser, 241 F.3d at 334.  Here, it has

been conclusively established that the events following Plaintiff's civil trial were the result of his

own actions, i.e., Defendants were attempting to control an inmate who was forcibly interfering

with their attempts to maintain order.  Therefore, Plaintiff's claim of retaliation fails on the

second prong because there was no "adverse action," and on the third prong because Defendants acted to restore discipline, and not to retaliate against Plaintiff's.

Plaintiff's claim that Defendant Delano choked him earlier in the day and that this was an act of retaliation, however, does not suffer the same fate because the jury in Plaintiff's criminal case did not consider this earlier incident.  As such, this claim survives Defendants' Motion for Summary Judgment.

Plaintiff's reliation based upon alleged witness harassment fail because Plaintiff cannot establish that the alleged actions (verbal harassment, placing handcuffs on "roughly," etc.) would deter someone of ordinary firmness from pursuing his constitutional rights.  Indeed, Defendants correctly point out that the alleged retaliatory actions did not prevent Plaintiff from presenting his case, or his witnesses from testifying.

### 3.      Conspiracy to cover up the "assault" following the jury verdict

The essential elements of a conspiracy claim pursuant to 42 U.S.C. § 1985(3) are:  (1) a conspiracy;  (2) motivated by racial or class-based discriminatory animus;  (3) an act in furtherance of the conspiracy; and (4) an injury to a person or a deprivation of any right or privilege.  Lake v. Arnold, 112 F.3d 682, 685 (3rd Cir. 1997).  Plaintiff alleges that Defendants "falsified records" to make it appear that he caused the disturbance and in an effort to cover up the fact that they had employed excessive force against him.  Plaintiff's claim necessarily fails for the same reasons that his underlying claim of excessive force fails; the jury in Plaintiff's criminal case has already determined that Defendants did not employ excessive force.  Therefore, there is no underlying deprivation sufficient to satisfy the fourth element of a conspiracy claim.

In his response to Defendants' Motion, Plaintiff indicates that he is relying upon Pennsylvania law for his conspiracy claim.  Under Pennsylvania law, however, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."  Weaver v. Franklin County, 918 A.2d 194, 202 (Pa. Cmwlth. 2007).  Defendants are entitled to summary judgment on the conspiracy claim because they are entitled to summary judgment on the underlying excessive force claim.

### 4.      Conspiracy to intimidate witnesses

Plaintiff also asserts that Defendants conspired to intimidate his witnesses during his civil trial before Judge Conti.  This is a claim arising under 42 U.S.C. § 1985(2), and requires Plaintiff to prove that he was injured by the alleged witness intimidation.  Malley-Duff & Assocs. v. Crown Life Ins. Co., 792 F.2d 341, 356 (3rd Cir. 1986).  While such injury need not take the form of actually preventing a witness from testifying, Plaintiff must still establish an injury in the form of some damage to his case.  "Allegations of witness intimidation under § 1985(2) will not suffice for a cause of action unless it can be shown the litigant was hampered in being able to present an effective case."  David v. United States, 820 F.2d 1038, 1040 (9th Cir. 1987).  Plaintiff repeatedly raised the issue of witness intimidation during his civil trial, and Judge Conti specifically ruled that Plaintiff had suffered no prejudice at his civil trial from the alleged acts of intimidation (Doc. 60-5, p. 39).  This finding prevents Plaintiff from establishing that he suffered an "injury" from the alleged witness intimidation and, accordingly, Plaintiff cannot make out a conspiracy claim.

### 5.      Battery

Defendants argue that a claim for battery must be made against the United States since the individual Deputy Marshals were acting within the course of their employment (Doc. 57).

Plaintiff has not responded to the Motion to Substitute the United States as a party, and he also has not responded to Defendants' motion to dismiss this claim for failure to exhaust administrative remedies pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. Plaintiff's claim, properly brought against the United States, must be dismissed for failure to exhaust administrative remedies.  McNeil v. United States, 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.").

## II. CONCLUSION

For the foregoing reasons it is respectfully recommended that Defendants' Motion to Substitute Party (Doc. 57) be granted, and that Defendants' Motion for Summary Judgment (Doc. 59) be granted with respect to all claims save for the claims against Defendant Delano premised upon his alleged "choking" of Plaintiff.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 72.D.2, objections to this report and recommendation are due on or before March 22, 2010. Failure to timely file objections may constitute a waiver of any appellate rights.

Date:   March 8, 2010                              s/Cathy Bissoon
                                                   CATHY BISSOON
                                                   UNITED STATES MAGISTRATE JUDGE

cc:
ANDRE JACOBS
DQ5437
SCI Dallas
1000 Follies Road
Dallas, PA 18612