# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANDRE JACOBS, | ) | |
| | ) | Civil Action No. 07 - 237 |
| Plaintiff, | ) | |
| | ) | District Judge Joy Flowers Conti |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| JEREMY DELANO and TORIANO, | ) | |
| | ) | ECF Nos. 118, 122 |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.  RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion for Summary Judgment filed by Defendant Toriano (ECF No. 122) be denied. It is further recommended that the Motion for Summary Judgment filed by Defendant DeLano (ECF No. 118) be granted as to Plaintiff's claim of retaliation and denied in all other respects.

### II.  REPORT

Plaintiff, Andre Jacobs, is a state prisoner currently incarcerated at the State Correctional Institution at Albion.  This lengthy prisoner civil rights action began in February 2007.  The basis for Plaintiff's claims arose out of Defendants' interaction with him on March 3, 2005, while transporting Plaintiff to and from a federal courtroom where he was litigating another prisoner civil rights case.  Plaintiff's Complaint contained five counts against five Deputy United States Marshals and three prison guards employed by the Pennsylvania Department of Corrections. The only remaining claims left for disposition are for excessive force and retaliation against

1

Defendant Deputy Marshal Jeremy DeLano and for failure to intervene against prison guard Defendant Toriano. All other claims have previously been disposed.

### A. Factual Background

On or about October 7, 2002, Plaintiff filed a prisoner civil rights case in this Court at Civil Action No. 02-1703. (ECF No. 121-1.) That action was filed pursuant to 42 U.S.C. § 1983 and alleged various civil rights violations against a number of state correctional employees. Id. A jury trial was conducted on that case, which lasted approximately four days, February 28, 2005, through March 3, 2005, the Honorable Judge Conti presiding. Id. On March 3, 2005, the trial proceedings were recessed by the Court at approximately 10:30 a.m.. (ECF No. 121-2 at 31.) At that time, Defendants DeLano and Toriano escorted Plaintiff, who was handcuffed behind his back, from Courtroom #9, on the ninth floor, to the United States Marshal's Service cellblock on the second floor of the federal courthouse. (ECF No. 121-4.) It is at this point that the parties' stories diverge.

According to Plaintiff, he had complained to Judge Conti throughout the course of the trial about ongoing harassment toward him and his inmate witnesses by the Marshals. *See generally* (ECF No. 7; ECF No. 156-1; ECF No. 121-10*); see also* (ECF No. 121-2 at 36.) While Plaintiff was being escorted from the courtroom during recess, he took a "wrong turn" and Defendant DeLano grabbed him by his arm and "started roughing [him] up.". (ECF No. 121-2 at 36.) When the elevator arrived, Plaintiff contends that, without reason, DeLano slammed him against the elevator wall repeatedly and then started using various methods to choke him to the point of almost passing out. (ECF No. 7 at ¶¶ 13, 21, 50; ECF No. 156-1 at ¶ 8; ECF No. 121-10 at 4.) Plaintiff states that during the attack, DeLano told him, "This is how we do complainers." (ECF No. 7 at ¶ 13; ECF No. 156-1 at ¶ 8.) Plaintiff remembers the elevator door opening on the

wrong floor and seeing a lady, later identified as Carrie Johnson, a court employee. (ECF No. 121-10 at 6.) He states that he yelled for help to Johnson when the doors were closing. (ECF No. 121-10 at 6.) When the doors opened on the second floor, the three exited the elevator and walked to the Marshal's cellblock. (ECF No. 121-10 at 7.) Plaintiff contends that once there, DeLano antagonized him (ECF No. 121-10 at 7-8) and then Supervisory Deputy U.S. Marshal Denis Lydon asked him what the problem was to which Plaintiff responded by telling him what had happened (ECF No. 121-10 at 8).

Plaintiff was later escorted back to Courtroom #9, and prior to resuming trial, Plaintiff stated to the Court:

> When I was going to the recess, I had turned the wrong way, and an officer grabbed me and started roughing me up, you know, unnecessarily. And, you know, I asked him, you know: Why are you grabbing on me like that
>
> And he said: This is my job.
>
> And I said: You don't have to throw me – when he put me in the elevator, he threw me up against the elevator several times. And I said: This is all unnecessary, you know. We went verbally back and forth.
>
> And like I said, Your Honor, the marshals have been constantly harassing me, harassing me, harassing me, ever since I been here this morning. They took my glasses for no reason, prescription glasses that I use on an as-needed basis. When I need them, I'll put them on.

(ECF No. 121-2 at 36.) Plaintiff requested a mistrial, which the Court subsequently denied stating:

> I've not seen any obvious agitation. You know, you may be – I can't speak to what you're feeling internally, but it hasn't manifested itself here.

(ECF No. 121-2 at 37-38.) At the conclusion of the trial, Plaintiff moved for relief from judgment and argued that the harassment from the Marshals and DOC staff prohibited him from

effectively presenting his case. (ECF No. 121-3 at 22-23.) In denying the motion, the Court stated:

> And I really don't see any basis from the conduct in the court. I thought you, quite frankly, handled yourself very appropriately. You made relevant objections at appropriate times.
>
> So the Court, from observation, does not see that there was a prejudice to you.
>
> I can't address what happened to you outside because those are not matters of fact before the Court; but based on your presentation in the course of the trial, I would not see a basis for granting that motion.

(ECF No. 121-3 at 23.)

When Plaintiff was being escorted out of the courtroom back to the cellblock following the verdict, an altercation occurred in the elevator. That incident was also the subject of this lawsuit but all claims arising therefrom have previously been disposed. In short, however, Plaintiff claimed that he was assaulted by the Deputy U.S. Marshals, *see generally* (ECF No. 7), but as a result of the incident Plaintiff was charged with one count of Assaulting, Resisting or Impeding a Federal Employee *see* United States v. Jacobs, 2:05-cr-64 (W.D. Pa. 2005). He later entered a plea of not guilty and proceeded to trial by jury where he was found guilty and sentenced to 210 months imprisonment. Id.

After the second incident in the elevator, and upon his return to the Department of Corrections later that day, Plaintiff was examined by medical staff. (ECF No. 121-11.) The Medical Injury/Incident Report noted that Plaintiff had injuries to his head, face and bilateral hands; specifically, a small hematoma to his right cheekbone, a small superficial scrape to his lower lip and red areas to his wrists. (ECF No. 121-11.) Photos of Plaintiff's injuries were taken and made a part of the Report. (ECF No. 121-11.) His medical records indicate that all injuries were superficial and that there was no active bleeding. (ECF No. 121-12 at 6.) Plaintiff was

instructed to cleanse all areas with soap and water and he was returned to his block that day. (ECF No. 121-11.) Follow-up sick call visits show that Plaintiff had no visible abrasions or swelling and that he was provided with Motrin. (ECF No. 121-12.) Plaintiff, however, claims that he suffered injuries to his shoulder and waist-bone, and bruising and swelling to his neck and body as a result of Defendant DeLano's actions in the first elevator incident during the morning recess on March 3, 2005. (ECF No. 7 at ¶ 50; ECF No. 156-1 at ¶ 8.)

On March 30, 2005, Plaintiff wrote a letter to U.S. Marshal Thomas Fitzgerald wherein he complained about "excessive physical force, retaliation . . . by Federal Marshals . . . on March 3, 2005." (ECF No. 121-13.) The letter describes the physical altercation that occurred in the elevator at the conclusion of the trial but did not mention the first incident that occurred during the morning recess that involved Defendants DeLano and Toriano. (ECF No. 121-13.)

With respect to the elevator incident in question, Defendant DeLano recounts a different version of events. DeLano states that upon exiting the courtroom for the recess, Plaintiff either turned or started to turn the wrong way. (ECF No. 158-2 at 71.) According to DeLano, Plaintiff was instructed to go in the other direction and he did not comply. (ECF No. 158-2 at 71.) DeLano states that Plaintiff was probably grabbed by the arm and directed where to go but he did not have an actual recollection of that happening. (ECF No. 158-2 at 71-72.)

DeLano claims that Plaintiff walked into the elevator without being directed to do so. (ECF No. 158-2 at 73.) He contends that upon entering the elevator, Plaintiff became belligerent towards him and threatened him by stating "take these handcuffs off and I'll kick your ass." (ECF No. 121-4; ECF No. 158-2 at 75-76.) DeLano states that he and Toriano just ignored Plaintiff and said nothing in response to Plaintiff's threats. (ECF no. 158-2 at 76, 78-79.) He denies ever touching Plaintiff (ECF No. 156-2 at 76) and the allegations that he choked and/or

assaulted Plaintiff as Plaintiff contends. (ECF No. 121-6 at 3.) He states that once he and Toriano exited the elevator with Plaintiff, Plaintiff continued to make threatening comments to him as he escorted Plaintiff back to the cellblock, (ECF No. 121-4), and at approximately 10:35 a.m. he told his supervisor that Plaintiff had threatened and taunted him (ECF No. 121-7; ECF No. 158-2 at 80-81). As agreed to by Plaintiff, Supervisory Deputy Lydon asked Plaintiff what the problem was and Plaintiff responded that DeLano was grabbing his arm. (ECF No. 121-7.) DeLano states that once Plaintiff was returned to the courtroom following the recess, Plaintiff made no mention to the Court of ever being choked by him or injured as a result of his actions. (ECF No. 121-2 at 36-64.)

According to Defendant Toriano, he remembers Plaintiff walking erratically down the hallway towards the elevators and DeLano holding him by the handcuffs. (ECF No. 156-3 at 38-39.) He also recalls DeLano having to place Plaintiff in the elevator when it opened because Plaintiff became resistive and would not walk or go in voluntarily. (ECF No. 156-3 at 39-40.) Toriano states that DeLano then held Plaintiff by the hands or cuffs and placed him facing against the elevator wall. (ECF No. 156-3 at 40-41.) He recalls DeLano's hands being somewhere around Plaintiff's wrist or cuff area during the entirety of the elevator ride but states that DeLano may have also held Plaintiff on the upper right shoulder as well. (ECF No. 156-3 at 41-43.) He remembers Plaintiff resisting in the elevator by raising his voice and turning his head, DeLano stating that the escort was going to be done his way and not Plaintiff's way, and Plaintiff responding "okay." (ECF No. 156-3 at 44-46.) Toriano does not remember what Plaintiff was saying when he was resisting in the elevator but maintains that DeLano never choked him at any point or placed his hands anywhere near Plaintiff's throat or face. (ECF No.

156-3 at 44, 46.)  He believes that Plaintiff was not resisting upon exiting the elevator.  (ECF No. 156-3 at 48.)

Carrie Johnson was the Senior Jury Clerk at the Court at the time of the incident in question and remembers standing at the elevator bank on the third floor waiting to go downstairs.  (ECF No. 161-1 at 3, 6.)  When the elevator opened, she saw an inmate, presumably Plaintiff, who, as soon as the doors opened, started to scream something along the line of "help me, ma'am."  (ECF No. 161-1 at 6.)  She claims that this surprised her because she did not hear any noise coming from the elevator before the doors opened.  (ECF No. 161-1 at 7.)  She also states that she did not see the inmate being choked, pushed or slammed against the elevator wall, and, in fact, she saw no contact between the Marshal and the inmate.  (ECF No. 161-1 at 6, 7.)  Then either DeLano or Toriano told her to "wait for the next elevator" and when the door closed she could still hear the inmate yelling.  (ECF No. 161-1 at 6, 7.)  She contends that she did not consider the inmate's plea for help to be a serious request and did not observe anything that would have suggested that an altercation had occurred because if she did she would have called for help.  (ECF No. 161-1 at 7, 8.)

## B.  Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of

material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### C. Discussion

**1.     Excessive Force Claim**

Plaintiff claims that Defendant DeLano used excessive force while in the elevator. Under the Cruel and Unusual Punishments Clause of the Eighth Amendment, inmates are protected against the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 219 (1986). In the context of an excessive force claim, the core judicial inquiry of whether the measure taken inflicted unnecessary and wanton pain and suffering is that set out in Whitley:

8

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Although the Eighth Amendment protects inmates against cruel and unusual punishment, it "does not protect an inmate against an objectively *de minimis* use of force." Smith v. Mensinger, 293 F.3d 641, 648 (3d Cir. 2002). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9.

In determining whether a defendant has used excessive force in violation of the Eighth Amendment, courts look to several factors including: "(1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts to temper the severity of the forceful response." Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotations and citation omitted). The extent of any injuries that an inmate suffers is relevant, but "does not end" this analysis. Hudson, 503 U.S. at 7. Consideration of these factors permit a court to make inferences concerning "whether the use of force could plausibly have been thought necessary" or whether the circumstances show "such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). "Summary judgment in favor of a defendant is not appropriate if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Brooks, 204 F.3d at 106 (citing Whitley, 475 U.S. at 322.)

Plaintiff argues that there are material facts in dispute that warrant the denial of Defendant DeLano's Motion for Summary Judgment. While the undersigned agrees, Defendant DeLano's arguments warrant a brief analysis.

First, Defendant DeLano argues that summary judgment should be granted in his favor because, even assuming Plaintiff's allegations are accurate, his version of events does not support a reliable inference that the amount of force used was objectively unreasonable. In support of this, he claims that neither the extent of Plaintiff's injuries nor his description of the force used give rise to the level of excessive force.

With respect to Plaintiff's injuries, Defendant DeLano argues that there is no evidence to support Plaintiff's claim that he suffered any injury at all as a result of the first elevator incident, let alone an injury that was caused by anything more than *de minimis* use of force. Alternatively, Defendant DeLano argues that even if all the injuries noted in the medical incident report and Plaintiff's medical records were attributable to his alleged use of force in the elevator during the morning recess, and not the altercation that occurred following the trial, those injuries also evidence only a *de minimis* use of force at most. Rejecting this very argument in Brooks, 204 F.3d at 108, the Third Circuit stated, "If we were to adopt the District Court's reasoning, a prisoner could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted in visible (or palpable or diagnosable) injures that were *de minimis*." The law in this Circuit is clear that *de minimis* injuries do not necessarily establish that *de minimis* force was used. *See* Mensinger, 293 F.3d at 649 (citing Brooks, 204 F.3d at 108).

> We do not, of course, suggest that a fact finder could not consider the *de minimis* nature of injuries along with all of the other circumstances in concluding that the force that was employed could not have risen to the level required for an Eighth

10

> Amendment violation. A properly instructed fact finder could, after considering all of the evidence, conclude that [the plaintiff's] injuries were so minor that the defendants' account of the incident is more credible than [the plaintiff's], and/or that the force was not of constitutional dimension. That may have been exactly what the district court did here. However, that is an issue of fact to be resolved by the fact finder based upon the totality of the evidence; it is not an issue of law a court can decide.

Mensinger, 293 F.3d at 649.

Considering the totality of the circumstances surrounding this incident and weighing the credibility of the parties, it is not beyond reason for a fact-finder to find that Plaintiff did not sustain any injuries at the hand of Defendant DeLano or that any injuries he did sustain were so minor that the force he used was not excessive. It is also not beyond reason to conclude the opposite. This, however, is a factual dispute and it is not for the Court to usurp the role of the jury and decide this issue.

Defendant DeLano also argues that Plaintiff's actions, or rather inactions, following the incident suggest that no such incident ever occurred or that Plaintiff's description of events is inaccurate. This includes Plaintiff's failure to complain to Supervisory Deputy U.S. Marshal Lydon immediately after the incident that he had been choked, banged up against the wall or injured; his failure to mention to Judge Conti once trial resumed that he was choked or injured; and his failure to make reference to the incident in his letter to U.S. Marshal Tomas Fitzgerald dated March 30, 2005. The circumstances surrounding the incident would indeed be beneficial to the jury in weighing each party's credibility; however, again, it is not for the Court to make such credibility determinations. Chatman v. City of Johnstown, 131 F. App'x 18, 20 (3d Cir. 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment

11

or for a directed verdict."); Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) ("In considering a motion for summary judgment a District Court may not make credibility determinations . . .")). Defendant DeLano also argues that Plaintiff is not credible because he has provided inconsistent versions of what occurred that day and was unable to remember the event in detail at his deposition. Again, these alleged inconsistences weigh on Plaintiff's credibility that only a jury may consider. Moreover, by itself the very fact that all three parties involved have provided differing accounts as to what occurred in the elevator presents material issues of fact in dispute warranting the denial of summary judgment.

Finally, as noted *supra*, Defendant DeLano argues that even assuming Plaintiff's version of events is accurate, it does not support a reliable inference that the amount of force used was objectively unreasonable. The undersigned disagrees as Plaintiff's version of events, being repeatedly slammed against the elevator wall and choked to the point of nearly passing out without provocation and while handcuffed, does not suggest that Defendant DeLano acted "in a good-faith effort to maintain or restore discipline." Whitley, 475 U.S. at 320 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Rather, it suggests just the opposite. Because it is clear that there are material facts in dispute as to whether Defendant DeLano used excessive force that would give rise to an Eighth Amendment violation, or even used any force at all, the undersigned recommends denying Defendant DeLano's Motion for Summary Judgment on this claim.

**2.      Failure to Intervene Claim**

Plaintiff's claim against Defendant Toriano is that he failed to intervene in Defendant DeLano's use of excessive force despite having ample amount of time to do so. In order for liability to attach under section 1983 for the failure to intervene in another's use of excessive

force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." Mensinger, 293 F.3d at 651; *see also* McCullough v. Miller, No. 06-514, 2008 U.S. Dist. LEXIS 72534, 2008 WL 4361254, at *9 (W.D. Pa. Sept. 24, 2008) (Lancaster, J.). In determining whether an opportunity to intervene existed, courts take into account many factors, "including the temporal length of the alleged assault, the proximity of the non intervening officer to the alleged assault, the ability of the non intervening officer to perceive and/or hear the alleged assault, etc." McCullough, 2008 U.S. Dist. LEXIS 72534, 2008 WL 4361254, at *9 (citing Swinyer v. Cole, No. C04-5348, 2006 U.S. Dist. LEXIS 48038, 2006 WL 1874100, at *3 (W.D. Wash. July 6, 2006); Mitchell v. James, No. 4:04CV1068, 2006 U.S. Dist. LEXIS 3140, 2006 WL 212214, at *5 (E.D. Mo. Jan. 27, 2006)).

As stated above, there are a number of material facts in dispute as to whether Defendant DeLano used excessive force in violation of the Eighth Amendment and in order to prove a claim for failure to intervene, "there must exist an underlying constitutional violation." Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005). The question before the Court now is not whether such an underlying violation did occur but whether Defendant Toriano had a realistic and reasonably opportunity to intervene assuming such a violation did occur. Defendant Toriano argues that Plaintiff has failed to come forward with any evidence to suggest that he had such an opportunity to intervene but the undersigned disagrees. The parties do not dispute that the elevator ride lasted whatever amount of time it took to get from the ninth floor to the second floor of the courthouse and Defendant DeLano testified in his deposition that this ride would last anywhere from 15-20 seconds. Although Plaintiff could not recall in his deposition exactly how long the ride lasted, he did state in his affidavit that it lasted long enough for him to be choked to

the point of almost passing out. These two assertions alone are sufficient evidence from which a reasonable jury could conclude that Defendant Toriano had an opportunity to intervene if a violation did occur. However, whether such an underlying constitutional violation did occur and whether he did in fact have the opportunity to intervene are disputes of material facts that must be decided by a jury. Therefore, it is recommended that Defendant Toriano's Motion for Summary Judgment be denied.

**3.     Retaliation Claim**

Plaintiff claims that Defendant DeLano choked him in the elevator in retaliation for his filing of the civil suit that he was litigating before Judge Conti at that time. It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983. Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action"[1] at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.[2] Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). Once all three criteria are met, the burden then shifts to the defendants "to prove by a preponderance of the evidence that it would have taken the same disciplinary action

---

[1]     An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

[2]     The crucial third element, causation, requires a plaintiff to prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)).

even in the absence of the protected activity." Rauser, 241 F.3d at 333. This means that "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)).

There is no question that pursuing a lawsuit is a constitutionally protected activity for retaliation purposes. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Millhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). With regard to the second two elements, however, Defendant DeLano argues that there is a lack of record evidence to support Plaintiff's claim and therefore an absence of a genuine issue of material fact. Counsel for Plaintiff neither responded to this claim in her Response in opposition to summary judgment nor in her Sur-Reply to Defendant DeLano's Reply. Because of this, Plaintiff has not met his burden of setting forth specific facts showing that there is a genuine issue of material fact in dispute for trial and Defendant DeLano should be granted summary judgment on this claim accordingly. *See* Matsushita, 475 U.S. at 586-87; Celotex, 477 U.S. at 322-23.

## III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion for Summary Judgment filed by Defendant Toriano (ECF No. 122) be denied. It is further recommended that the Motion for Summary Judgment filed by Defendant DeLano (ECF No. 118) be granted as to Plaintiff's claim of retaliation and denied in all other respects.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the

date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: May 24, 2013

_____
Lisa Pupo Lenihan
Chief United States Magistrate Judge


cc: Counsel of Record
 *Via ECF Electronic Mail*